UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CT-3024-BO

| MARK ANTHONY MILLER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CORRECTIONAL OFFICER RIEPER, et al., | ) | |
| Defendants. | ) | |

Mark Anthony Miller, a state inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983. Defendants filed a motion for summary judgment [D.E. 18]. Miller was given proper notice of his rights regarding the pending motion and timely filed a response. The matter is ripe for determination.

i.    Issues

Miller alleges the use of excessive force in violation of the Eighth Amendment by Correctional Officer Brian Rieper, Sergeant Banjoko Correll, Sergeant Michael Clark, and Correctional Officer Rhacinda Barner.

ii.    Discussion

    a.    Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, but "must

come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A trial court reviewing a summary judgment motion should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. See Matsushita, 475 U.S. at 587. The court can rely on the medical affidavits and prison medical records, including mental health records, in ruling on a motion for summary judgment. See generally, Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982).

    b.    Factual Outline

Plaintiff's allegations are quite difficult to follow. The court finds that plaintiff asserts the following. On a date and time not indicated, defendant Correll came to plaintiff's cell with a "mace gun." Compl., Statement of Claim. Plaintiff states that he refused to submit to handcuffs because prison policy required that guards be accompanied by another guard. Id. Defendant Correll was not with another guard, and thus plaintiff states he was scared to go with defendant Correll without a witness. Id. At this point, while the complaint and response are very unclear, mace must have been sprayed in the cell. See Id., "I was never sopouse [sic] to be mased [sic] period because I wasnt [sic] a threat to nobody cause [sic] if I was he would had everybody her [sic] because he would have been scared but it the otherway [sic] around . . . " and attachments to complaint; and Response, "Plaintiff alleges that defendant Correll came to his cell and told him

2

to come to the trap door Plaintiff also alleges that when he went to the trap door defendant Campbell maced him without cause and told him to submitt [sic] to handcuffs, . . . ."[1]

Plaintiff then states that defendant Clark and defendant Rieper arrived at his cell wherein plaintiff did submit to being handcuffed because a witness was present. Id. Plaintiff also alleges that defendants took him to a mop closet and told him to "bend down." Response, at 2. Plaintiff refused because he was frightened and did not know what was taking place. Id. Defendants Correll and Clark then grabbed plaintiff's hair and head and took plaintiff to the nurse's station where defendants "threw his face in the door and put me threw [sic] some sort of torture type tactic for 30 minutes." Defendants Correll and Clark also had plaintiff bend over, bending his hands up and down while he was handcuffed causing marks on his wrists. Next, it is alleged that defendant Rieper stepped on his ankle. Plaintiff states he plead for the nurse "to do something" but the nurse responded that they had "nothing to do with the torture that was going on." Id.

Since the alleged incident, plaintiff claims that his ankles have been weak and he has been off balance. Compl., Statement of Facts. Plaintiff allegedly has been denied appropriate treatment several times. Id.

Defendants statement of the facts are as follows. On May 19, 2009, at approximately 10:55 a.m., defendant Correll was advised by Control Station Officer Ivan Butler that multiple

---

[1] The court considers the reference to "defendant Campbell" to be a typographical error. It appears the person to which both plaintiff and defendants refer to actually be defendant Correll. The court bases this on both the fact that no defendant Campbell is named in this action, and that the name Campbell does not appear in the materials before the court (with the exception of plaintiff's response as noted and page 2 of the memorandum for summary judgment as noted.). The court further finds that the existence or nonexistence of an officer Campbell does not change the outcome of this order. Therefore, the court proceeds as if the reference is to defendant Correll.

3

inmates on the eastside of BC2A were creating a major disturbance on the cell block by continuously kicking and beating on their cell doors. Mem. in Supp. of Summ. J., Correll Aff. ¶4. Defendant Correll states that he responded to the area and that all the inmates except plaintiff had stopped the behavior. Id. ¶5. Defendant Correll continues that he next opened plaintiff's food passage door and gave plaintiff a direct order to stop his activities. Plaintiff refused to comply and continued kicking his cell door. DOC Policy and Procedures Manual, Chapter F, Section 1500, Use of Force, states that,

> "(a) Hands-on Physical Force, including approved CRDT (Control, Restraints, Defensive Techniques), self-defense techniques, may be used: (1) To restrain or move a non-aggressive, non-compliant inmate; or (2) To subdue an aggressive inmate when pepper spray is not effective or is not feasible; or (3) To prevent an escape, to protect property, to defend the officer or a third party from imminent assault, to ensure compliance with a lawful order or to return an escapee to custody. (b) Pepper Spray, if feasible, should be used as the first level of response: (1) To control or deter violent, threatening or aggressive acting inmates; or (2) To defend the officer or a third party from imminent assault. (3) Pepper spray is to be sprayed directly in the eyes."

Id. ¶17, Ex. A. Defendant Correll administered one short burst of OC spray on plaintiff in an effort to get plaintiff to comply with his orders. Id., ¶ 9. After Defendant Correll administered the pepper spray, plaintiff went to the back of his cell. Id. When defendant Correll gave plaintiff an order to submit to handcuffs, plaintiff refused. Id., and Clark Aff. ¶4. Defendant Correll secured plaintiff's food passage door and left to assemble an extraction team. Id. While defendant Correll was assembling an extraction team, defendants Clark and Rieper arrived at plaintiff's cell. Id., Correll Aff. ¶11, Clark Aff. ¶5. Defendant Clark ordered plaintiff to submit to handcuffs, and plaintiff complied. Id. Clark Aff. ¶5, Rieper Aff. ¶5. Defendants Correll and

4

Clark escorted plaintiff to the decontamination area while defendant Rieper went to get a pair of full restraints. Id. Correll Aff. ¶13. Once in the decontamination area, plaintiff became unruly. Id. Correll Aff. ¶ 13-15; Clark Aff. ¶ 6-8. Defendant Correll ordered plaintiff to calm down as he was flushing his eyes and face with water. Id. Correll Aff. ¶ 13. When plaintiff was ordered to leave the decontamination area, he refused, requiring defendants Clark and Correll to take plaintiff's wrist in a bent wrist come along hold. Id. Correll Aff. ¶ 13-15; Clark Aff. ¶ 6-8. Defendants Clark and Correll took plaintiff to the nurse's station in Unit 1 for a medical screening. Id. When plaintiff and defendants Correll and Clark arrived at the nurse's station, the nurse was not there. Id. Defendant Rieper came to the nurse's station, and plaintiff was placed in full restraints and placed in a holding cell until the nurse returned. When the nurse returned, plaintiff was escorted to the nurse's station to be screened. After being examined, plaintiff denied any injuries, voiced no complaints, and no apparent injuries were noted. Id. Clark Aff. ¶¶6, 7, 8; Correll Aff. ¶¶14, 15,16; Clark Aff. ¶7 and Johnson Aff., reviewing and attaching medical records. Plaintiff was medically released and returned to his cell. Id.

Because of the incident, plaintiff was charged with and found guilty of committing several disciplinary offenses. Mem. in Supp., Attachment "Offense and Disciplinary Report."

As for the medical records subsequent to the event, plaintiff first submitted a sick call request complaining of ankle pain on August 2, 2009, over two months after the use of force incident. Mem. in Supp. of Supp, J., Johnson Aff., reviewing and attaching medical records. Plaintiff was assessed by a registered nurse on August 7, 2009. Id. Plaintiff complained of left ankle pain, but "no swelling or redness" was observed by the examining nurse. Id. "Both ankles

5

were symmetrical, pedal pulse was present, range of motion produced no acute distress and no apparent discomfort was noted." Id. Medical treatment was deemed unnecessary. Id.

After August 2, 2009, plaintiff submitted approximately 12 sick call requests regarding his feet or ankles. Id. Plaintiff was given fungus cream and foot powder. Id. Plaintiff was also suspected of malingering. Id. However, plaintiff was diagnosed with having a form of having degenerative joint disease, athletes foot, and flat feet. Id. On October 16, 2009, plaintiff was prescribed Tinactin Powder, Lamasil Cream, Eucrin Lotion and arch supports. Id. Johnson Aff. ¶¶5, 6, 7, Ex. A.

c. Qualified Immunity

Defendants assert qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir.2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two-pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). In resolving the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the

6

situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, 555 U.S. 223 (2009). A court has discretion to decide which step of the two-prong test to analyze first. Pearson, 555 U.S. at 242.

    D.    Excessive Force

The court first determines whether defendants violated plaintiff's constitutional rights. It is clearly established that the Eighth Amendment forbids the "unnecessary and wanton infliction of pain" against inmates. Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Not every infliction of pain is forbidden, however, and prison officials may apply force to an inmate "in a good faith effort to maintain or restore [prison] discipline." Id. at 320 (internal quotation marks omitted). However, where prison officials use force "maliciously and sadistically for the very purpose of causing harm," an Eighth Amendment violation has occurred. Id. at 320-21 (internal quotation marks omitted). Furthermore, the Supreme Court has held "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Wilkins v. Gaddy, ___ U.S. ___, ___, 130 S. Ct. 1175, 1176 (2010). The court must look at "the nature of the force rather than the extent of the injury." Id. "This is not to say the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." Id. at 1178 (citation omitted). It is one factor in applying and reviewing the Eighth Amendment analysis. Id.

In determining whether prison officials have acted maliciously and sadistically, a court should balance: (I) "'the need for the application of force,'" (ii) "'the relationship between the need and the amount of force that was used,'" (iii) the threat reasonably perceived by the

7

responsible officials, and (iv) "any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). Not every malevolent touch by a prison guard, later determined in the calm of a judge's chambers to be gratuitous, gives rise to a federal cause of action. Hudson, 503 U.S. at 9 (citing Johnson, 481 F.2d at 1033). Prison officials are charged with balancing competing governmental interests, such as: the maintenance of order; protection of correctional officers, prison staff and other inmates; and inmates' rights to be free from cruel and unusual punishment. Whitley, 475 U.S. at 321. When correctional officers use force to keep order, they have little time for considered reflection and must quickly and decisively balance the need to maintain order and restore discipline through force against the risk of injury to inmates. Hudson, 503 U.S. at 6.

Plaintiff cannot show that defendants used force which was excessive. It appears from the facts before for the court, that on May 19, 2009, there was a disturbance within the unit on which plaintiff was residing. Officer Correll responded to the disturbance. Plaintiff by his own admission did not comply with defendant Correll's instruction to submit to being handcuffed. Plaintiff was maced with approximately 2 bursts of mace. Thereafter, plaintiff submitted to being handcuffed by defendants Reiper and Clark. He was then escorted to the decontamination area. While he contends that he was tortured for 30 minutes in front of the nurse. The medical records do not indicate any injury as a result of the mace or alleged activity. The materials show that the amount of force used by defendants was limited to the amount necessary to restrain plaintiff and to restore order; it was not maliciously and sadistically used to cause harm. The medical records support this holding. Excessive force has not been shown in the matter and defendants are cloaked with qualified immunity.

8

Case 5:11-ct-03024-BO   Document 22   Filed 01/24/13   Page 8 of 9

iii. Conclusion

Accordingly, defendants' motion for summary judgment [D.E. 18] is ALLOWED. The Clerk is DIRECTED to CLOSE the case.

SO ORDERED, this the 23 day of January 2013.

*[signature]*
TERRENCE W. BOYLE
United States District Judge

9